IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

William D. Martin, Jr.,           Case No. 3:10 CV 1500

        Plaintiff,           MEMORANDUM OPINION
                                 AND ORDER
-vs-
                                 JUDGE JACK ZOUHARY
Theodore N. Clark, et al.,

        Defendants.

## INTRODUCTION

Pending before the Court is Defendants' Motion to Dismiss (Doc. No. 3). Plaintiff filed his brief in opposition (Doc. No. 7) and Defendants filed their reply (Doc. No. 8).

## BACKGROUND

Plaintiff William Martin is the former superintendent of the Bellevue City School District (Doc. No. 1, ¶ 3). Defendants are Theodore Clark ("Clark") and Martin Shelley ("Shelley"), members of the Bellevue City School District Board of Education ("School Board"), and the School Board itself (Doc. No. 1, ¶¶ 4-6). On July 9, 2009, Clark and Shelley sent a letter to Plaintiff advising him that the School Board intended to hold a *Loudermill* pre-termination hearing on July 15, 2009 regarding his employment. Plaintiff was suspended, with pay (Doc. No. 1, Ex. 2).

Defendants' basis for the hearing was that during his tenure, Plaintiff had, among other things, made numerous comments to the School Board president and others that were interpreted "as being

of a sexual nature and creating a hostile work environment." Defendants' letter provides several examples of these comments. The July 9, 2009 letter also advised Plaintiff that he was prohibited from certain activity, including speaking to school employees and attending school functions:

> You are also directed that you may not be on School District property or attend any School District function during the pendency of this matter. Lastly, you are directed not to make contact with any school district employee until further notice from the Board. Should you violate these directives, the Board of Education shall take appropriate legal action, both civil and criminal to enforce these directives.

On July 7, 2010, Plaintiff filed this action seeking compensatory damages against Defendants (Doc. No. 1). Plaintiff alleges that Defendants violated his constitutional rights to free speech and freedom of association by prohibiting him from speaking with other school employees. Plaintiff also alleges that Defendants deprived him of a constitutionally protected liberty interest by prohibiting him from being on school property or attending school functions. Finally, Plaintiff asserts state law claims for defamation against each of the Defendants.

## CIVIL RULE 12(B)(6) STANDARD OF REVIEW

When deciding a motion to dismiss under Federal Civil Rule 12(b)(6), the function of the court is to test the legal sufficiency of the complaint. In scrutinizing a complaint, the court is required to accept the allegations stated in the complaint as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), while viewing the complaint in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). Although a complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129

S. Ct. 1937, 1949 (2009). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949). This standard for Rule 12(b)(6) applies to "all civil actions." *Id.* at n.4 (internal quotation omitted).

## ANALYSIS

### A. Liberty Interest Claims

Plaintiff alleges he was denied a constitutionally protected "liberty interest" when Defendants prohibited him from being on school property to perform his job duties and attending school functions (Doc. No. 1, ¶¶ 11, 12). In *Pearlman v. Cooperstown Cent. Sch. Dist.,* 2003 U.S. Dist. LEXIS 25837 (N.D.N.Y. June 11, 2003), the plaintiff, a school principal, was suspected of having an inappropriate relationship with a student. He was suspended with pay and prohibited from being on school property pending the outcome of a disciplinary action against him. He was ultimately suspended for three months without pay and instituted a lawsuit upon his return to work. The principal alleged that he had "a liberty interest in attending events on school property without first having to ask [the superintendent's] permission." *Id.* at *8. The court held that the principal simply did not have a constitutionally recognized liberty interest in attending school functions.

*Nichols v. Western Local Bd. of Educ.*, 805 N.E.2d 206 (Ohio Ct. App. 2003), addressed a similar situation. In *Nichols*, the Ohio Court of Appeals was faced with the issue of whether a school board could properly prohibit a student's parent from attending school functions. After the mother of a student got into an altercation with her student-daughter's volleyball coach, the mother was banned from any activities involving the local school district for a three-month period by the school's

3

principal and athletic director. The decision was upheld by the school board after a hearing in which the mother was represented by counsel. The mother appealed, arguing that the ban denied her the constitutionally protected freedom to participate in her daughter's education. The court, however, held that "[a]lthough the education and upbringing of one's children is a recognized liberty interest under the Constitution, this does not create a constitutional right for a parent to attend school activities or be present on school property." *Id.* at 211.

Plaintiff directs this Court to *Ohio v. McGroarty*, 1997 Ohio App. LEXIS 4837 (1997), as support for his claims. That case, however, is inapposite. *McGroarty*, a criminal case, addressed whether there was sufficient evidence to uphold the defendant's conviction for criminal trespass. *McGroarty* never addressed, let alone resolved, the issue of whether the defendant's exclusion from school property violated his First Amendment rights. The conviction was reversed because the court determined that the superintendent -- who excluded the defendant from school grounds after an altercation with the school principal -- did not have the authority to do so. Therefore, "the State failed to meet its burden of establishing all of the elements of the crime of criminal trespass. Specifically, there was no valid evidence presented that appellant was without privilege to enter and remain on school grounds." *Id.* at *8.

Like the plaintiffs in *Pearlman* and *Nichols*, Plaintiff here has not directed the Court to any authority, in this jurisdiction or elsewhere, that establishes he has a liberty interest in attending school functions or being on school property.

### B. Freedom of Speech Claim

Plaintiff next claims that Defendants violated his First Amendment right to free speech when they prohibited him from speaking to and associating with other school district employees (Doc. No.

4

1, ¶ 23). Although Plaintiff is correct that public employees do not shed their First Amendment rights at the schoolhouse gate, *Pickering v. Board of Education,* 391 U.S. 563 (1967), that does not mean reasonable restrictions may never be placed on a public employee's speech. Only speech that "touches upon a matter of public concern" is protected under the First Amendment. *Taylor v. Keith*, 338 F.3d 639, 644 (6th Cir. 2003).

Speech touches on matters of public concern if it can be "fairly considered as relating to any matter of political, social or other concern to the community." *Taylor*, 338 F.3d at 644 (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the record as a whole." *Id.* (citing *Connick*, 461 U.S. at 147). "[C]asual conversation is not protected by the First Amendment." *Pearlman*, 2003 U.S. Dist. LEXIS 25837, at *14 (citing *Swank v. Smart,* 898 F.2d 1247, 1251 (7th Cir. 1990)).

Here, Plaintiff does not allege that he made, or intended to make, comments that touched upon matters of public concern. He does not allege, for example, that he either made or intended to make comments challenging a policy of the School Board. Rather, he claims he was denied the ability to talk with other school officials about comments he allegedly made to them and about his upcoming *Loudermill* hearing -- a personal matter.

Furthermore, Plaintiff was not prohibited from speaking to others, including the media, about the circumstances giving rise to his disciplinary matter. Neither was Plaintiff's counsel prohibited from speaking with school district employees for purposes of preparing for his *Loudermill* hearing. Defendants simply put reasonable restrictions on Plaintiff's speech -- which, as explained above, was not protected by the First Amendment -- to ensure the integrity of the disciplinary proceedings by

5

preventing Plaintiff from unduly influencing potential witnesses, intentionally or otherwise. Defendants' conduct did not violate the First Amendment.

### C. Freedom of Association Claim

"Freedom of association is not an enumerated constitutional right, but arises as a necessary attendant to the Bill of Rights' protection of individual liberty interests." *Johnson v. City of Cincinnati*, 310 F.3d 484, 498 (6th Cir. 2002) (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984)). The Supreme Court has identified two forms of constitutionally protected rights falling under the umbrella of the freedom of association: (1) "freedom of intimate association," and (2) "freedom of expressive association." *Id.* The freedom of intimate association "stems from the necessity of protecting individuals' ability 'to enter into and maintain certain intimate human relationships [that] must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme.'" *Johnson*, 310 F.3d at 498-99 (quoting *Roberts*, 468 U.S. at 617-18). This includes, for example, the right to familial association and the upbringing of one's child. *Id.* (citing *Roberts*, 468 U.S. at 619).

In addition, the freedom of association includes "a right to associate for the purpose of engaging in those activities protected by the First Amendment–speech, assembly, petition for the redress of grievances, and the exercise of religion. The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties." *Roberts*, 468 U.S. at 618.

Plaintiff does not allege in his Complaint that he was denied the ability to engage in the kind of "intimate association" that *Roberts* describes. Defendants' alleged conduct did not restrict Plaintiff's association with his family or other intimate relationships. As such, the only type of

6

freedom of association that could conceivably apply to Plaintiff's case is the second type -- the freedom of expressive association. As described above, however, Plaintiff did not plead that he was engaged or intended to engage in protected expressive activity or association. Therefore, Plaintiff has failed to make out a claim for a violation of his ability to associate with others to engage in protected expression.

### D. State Law Claims

Finally, Plaintiff's claim of defamation is a matter of state tort law. District courts have supplemental jurisdiction to consider state law claims when those claims and federal law claims come from the same operative facts and when considerations of judicial economy dictate having a single trial. 28 U.S.C. § 1367(c); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724, (1966). The court, however, may exercise discretion in hearing state law matters. *Id.* at 726. In cases where the federal law claims are dismissed before trial, the state law claims should also be dismissed. *Id.*

In light of the dismissal of Plaintiff's federal claims, and as this case is in a very early stage, this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

### CONCLUSION

For the foregoing reasons, Defendants' Motion (Doc. No. 3) is granted and Plaintiff's federal claims are dismissed, with prejudice, and his state law claims are dismissed, without prejudice.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

October 21, 2010